UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| STACY LABONTE, KELLY VEILLEUX, each individually, and A.V., by his parents and next friends,<br><br>    Plaintiffs,<br><br>v.<br><br>RIVERSIDE PARK ENTERPRISES, INC d/b/a SIX FLAGS NEW ENGLAND,<br><br>    Defendant. | Civil Action No.:<br><br>Jury Trial Demanded |

## **COMPLAINT**

**I.**   **INTRODUCTION**

1.   The Plaintiffs, Stacy LaBonte, Kelly Veilleux and A.V., their minor child, (hereinafter, "Plaintiffs"), bring claims against Riverside Park Enterprises, Inc. d/b/a Six Flags New England (hereinafter "Defendant" or "Six Flags") for disability discrimination in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, the Massachusetts Public Accommodations Law, M.G.L. c. 272, § 98, Article 114 of the Amendments to the Massachusetts Constitution, and the Massachusetts Equal Rights Act, M.G.L. c. 93, § 103(a) for denying a child with a disability an equal opportunity to participate in, and a reasonable modification required to access and use, areas of its amusement park open to pedestrian use, and for retaliating against his family when they complained about Defendant's appalling conduct.

2.   The Defendant discriminated against an 11-year-old child, A.V., who was born with Spinal Muscular Atrophy Type II and uses a wheelchair, and his family when it removed

1

A.V. from Six Flags water attractions because of his need for reasonable modifications to accommodate his disability, rescinded the accommodation it previously approved, and revoked their season passes rather than attempting to identify alternative modifications.

**II.    PARTIES**

3.      Plaintiff A.V. is a minor child who was subjected to discrimination based on his disability. Plaintiffs Stacy LaBonte and Kelly Veilleux are the parents and guardians of A.V. Plaintiffs LaBonte and Veilleux bring this action as next friends of Plaintiff A.V and on their own behalf based on their association with A.V. Plaintiffs are currently and have been at all times relevant to this action residents of Ludlow, Massachusetts.

4.      Defendant Riverside Park Enterprises, Inc. d/b/a Six Flags New England is a domestic corporation with its principal place of business, the Six Flags New England amusement park, located at 1623 Main Street in Agawam, Massachusetts. Defendant accepts service via its registered agent: Corporation Service Company, 84 State Street, Boston, MA 02109.

**III.   JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over Plaintiffs' federal law claims arising under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and state law claims per 28 U.S.C. §§ 1331, 1343, and 1367.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

7.      Assignment to the Western Division is appropriate pursuant to Rule 40.1(D)(1)(c) of the Local Rules of the United States District Court for the District of Massachusetts because the Plaintiffs reside and the Defendant is located in this division.

8.      Plaintiffs exhausted administrative remedies by timely filing a complaint with the

Massachusetts Commission Against Discrimination ("MCAD") on June 11, 2019, which was within 300 days of the date when Plaintiffs were first subjected to disability discrimination during their visit to Six Flags on June 2, 2019.

9. MCAD investigated the complaint and on June 22, 2021 found probable cause to believe that Defendant had in fact subjected Plaintiffs to disability discrimination and retaliation.

10. After an unsuccessful conciliation, Plaintiffs received a release of jurisdiction from MCAD dated October 29, 2021, pursuant to 805 CMR 1.08(1)(b)(2020). This action is being brought within three years of the discriminatory conduct.

## IV. FACTS

11. Plaintiff A.V. ("A.V.") is currently 14 years old. Like so many other teens, he is a smart and quick-witted child who enjoys playing video games. A.V. was also born with Spinal Muscular Atrophy Type II (SMA2), a progressive genetic disorder that affects his motor neurons, the nerve cells that control voluntary muscles. Due to muscle atrophy caused by SMA2, A.V. cannot stand, walk, or hold his torso upright unaided.

12. A.V. uses a specialized motorized wheelchair every day. For areas that he cannot access using his wheelchair, whether due to architectural features, like doorways, or the presence of water that could potentially damage it, A.V. has a customized Convaid Cruiser fitted and provided through Boston Children's Hospital. The Convaid Cruiser is an attendant-propelled medical stroller for indoor and outdoor use with a three-point positioning belt and H-harness shoulder straps that allow A.V. to securely sit in the seat with his trunk upright.

13. For most of A.V.'s life, SMA2 has prevented him from participating in many outdoor activities with his peers. Prior to visiting Six Flags New England for the first time, A.V. had accepted that there would be many fun activities he would not be able to access.

14. On or about April 17, 2019, Plaintiffs LaBonte and Veilleux purchased three day passes from Six Flags for themselves and their youngest son. A.V. was provided a promotional free day pass and a temporary Attraction Access Pass from Six Flags Guest Relations. They were hopeful that Six Flags could be a place that the whole family could enjoy together.

15. At the end of their visit that day, Plaintiffs were excited by the prospect of getting season passes. Plaintiffs specifically inquired at Guest Relations about whether Six Flags would permit A.V. to use the water park, known as Hurricane Harbor, which was to open on May 24, 2019. Unlike most of the other attractions, A.V. could safely take part in many of the water attractions using a mobility aid propelled by his parents. A Guest Relations representative informed Plaintiffs that A.V. could use the water attractions if they provided documentation from a medical provider supporting that he could safely use the water park. Plaintiffs took the required paperwork home with them that day.

16. Plaintiffs consulted A.V.'s primary care physician regarding his use of the water park and asked her to complete the necessary paperwork. The physician completed the paperwork indicating that A.V. could safely use the water attractions. As his long-time physician., she was familiar with his mobility aid options and understood that he would be using the Convaid Cruiser controlled by his parents in the water attractions.

17. Approximately one week later, Plaintiffs provided Six Flags with medical documentation from A.V.'s physician indicating that A.V. was medically able to take part in Six Flags attractions with accommodations, including assistance from his parents. Six Flags' Guest Relations representative reviewed the documentation, visually inspected A.V.'s Convaid Cruiser, and informed Plaintiffs that A.V. had been approved to partake in the water attractions. Guest Relations informed Plaintiffs that the only restriction to their use of the water park was that A.V.

could not go on the water slide attractions, which Plaintiffs had no intention of using regardless of any restrictions imposed by Six Flags.

18. Six Flags also issued A.V. an Attraction Access Pass, which alerted the attraction operators that Plaintiff's request for accommodation had been approved by Guest Relations. The family was responsible for picking up the Attraction Access Pass at the beginning of each visit and dropping it off before they left.

19. With A.V.'s access approved, Plaintiffs bought five season passes – for Plaintiff LaBonte, Plaintiff Veilleux, A.V., A.V.'s younger brother, and Plaintiff Veilleux's adult daughter. The costs of their previous one-day passes were put toward the season pass purchases.

20. After purchasing the season passes in April 2019, Plaintiffs went to Six Flags as a family multiple times and were excited for the water park to open so that A.V. could enjoy more access to attractions.

21. On May 27, 2019, the family spent approximately nine hours at Six Flags using their season passes. Plaintiffs spent most of that time in the water park with A.V. safely using his Convaid Cruiser, leaving the area only to have lunch.

22. The Convaid Cruiser medical stroller allowed A.V.'s parents to move their then 11-year-old son through water attractions in Hurricane Harbor with ease, and allowed A.V. to securely sit upright so he could interact and play with his younger brother and family with both his head and torso safely above the water. At the time, A.V. weighed approximately 115 pounds.

23. As Plaintiffs moved safely through the water attractions, A.V.'s father pushed the medical stroller from behind while his mother generally stationed herself in front of his stroller. Plaintiffs were careful to avoid attractions that had high standing water or high waves. They also maintained awareness about other patrons around them and avoided crowded water attractions.

24. A.V. and his family spent much of their time on May 27, 2019 in Splash Island, an area of Hurricane Harbor specifically designed for small children. As Defendant's website states, the water in Splash Island "stays shallow and safe throughout;" it "has a wave pool with tiny tot-sized waves" and a lazy river "with a gentle flow" where "[y]oung explorers can grab a raft and float down the river in style or just romp through on foot."[1] The depth of the water reaches only two feet.[2] There is no minimum height requirement for Splash Island, but there is a maximum height of 48 inches.[3] Accordingly, in the Splash Island attractions, the water levels do not go above the seat of A.V.'s Convaid Cruiser.

25. A.V. enjoyed himself immensely and was excited about returning to the water park to play with his family the following week.

26. On June 2, 2019, Plaintiffs returned to the water park and enjoyed the use of the same water attractions in the same manner for several hours.

27. After eating lunch, Plaintiffs stopped in the Monsoon Lagoon attraction. According to Defendant, the Monsoon Lagoon is a "family pool/attraction for swimming and wading with water elements and features, at various depths of water up to 5 ½ feet deep."[4] There is no minimum height for the Monsoon Lagoon; it has a zero-depth entry that allowed A.V.'s parents to control the depth of water around him based on how far they proceeded from the entry.

28. A Six Flags representative approached Plaintiffs while they were in the Monsoon Lagoon. At the time, A.V. was sitting in the Convaid Cruiser in water below his waist with

---

[1] *Splash Island*, Six Flags New England, https://www.sixflags.com/newengland/attractions/splash-island (last visited April 18, 2022).
[2] Six Flags New England, *Safety & Accessibility Guide* at 67, https://static.sixflags.com/website/files/sfne_ada-guidelines.pdf.
[3] *Splash Island*, Six Flags New England, https://www.sixflags.com/newengland/attractions/splash-island (last visited April 18, 2022).
[4] Six Flags New England, *Safety & Accessibility Guide* at 64, https://static.sixflags.com/website/files/sfne_ada-guidelines.pdf; *Monsoon Lagoon*, Six Flags New England, https://www.sixflags.com/newengland/attractions/monsoon-lagoon (last visited April 18, 2022).

Plaintiff Veilleux controlling the medical stroller by the handles. The only other people in close proximity to A.V. were members of his family, including Plaintiff LaBonte.

29. Defendant's representative told the Plaintiffs that A.V. was not allowed in the water attractions. When Plaintiffs offered to go back to Splash Island where they had spent time earlier that day, the representative told them that he could not use the medical stroller in any of the water attractions. The representative made clear that this prohibition included the sprinkler attractions that had no standing water.

30. When Plaintiffs explained to Defendant's representative that A.V. needed his medical stroller to accommodate his disability and allow him to use the water attractions safely, the representative insisted that, in order to take part in the water attractions, A.V. would have to be taken out of the medical stroller and sat on the ground or they could rent an inner tube for him to utilize. Plaintiffs explained that A.V. is unable to sit upright without support, and that he could not sit safely in the available inner tubes because A.V. is unable to support his own weight and would fall through the hole in the middle. Plaintiffs asked whether A.V. would be permitted to use the sprinkler attractions with his medical stroller in Hook's Lagoon, "[a] children's aquatic attraction with various water elements in zero depth of water"[5] and were told that he would have to be sitting on the ground.

31. A.V. witnessed the entire exchange with Defendant's representative and became so upset that he began bawling and could not be consoled.

32. Plaintiffs asked to speak with a manager and were directed to Guest Relations, where they first spoke with Mitchell Heisler, the Six Flags Aquatics Supervisor. Mr. Heisler stated that it was Six Flags' policy not to allow wheelchairs to be used in the water attractions.

---

[5] Six Flags New England, *Safety & Accessibility Guide* at 60, https://static.sixflags.com/website/files/sfne_ada-guidelines.pdf.

Plaintiffs explained the device A.V. was using was a medical stroller – a device they acquired for A.V. to use as a mobility aid after transferring from his motorized wheelchair – and informed Mr. Heisler that Guest Relations had already approved A.V.'s use of the medical stroller in the water attractions before they purchased a season pass for A.V., and asked Mr. Heisler to show them the policy that excluded medical strollers from the water attractions.

33.     Mr. Heisler was unable to produce the policy but then moved on to speculate that someone might get caught under A.V.'s medical stroller in the water attractions, despite the presence of his parents and the obvious features of the Convaid Cruiser that would prevent such an outcome, such as: the low height of the seat off of the ground, the bars extending between the push handle and the rear wheels that cross behind the seat, the horizontal bar connecting the rear wheels below the seat, and the bars that cross below the front of the seat.

34.     Plaintiffs LaBonte and Veilluex continued to advocate for A.V.'s access to the water attractions. Ultimately, a second manager, Six Flags Director of Operations Frank Doninger, arrived. Plaintiffs discussed with Mr. Doninger the process they underwent to get a medical provider's prescription for the stroller and prior approval from Six Flags before using the medical stroller in the water attractions. Mr. Doninger took photographs of A.V.'s Convaid Cruiser and indicated that he would talk to another Six Flags supervisor to determine whether an accommodation could be arranged.

35.     By the time the conversation with Mr. Doninger was over, it was approximately 5:00 pm. After standing for several hours outside of Guest Services advocating for A.V.'s continued access to the water rides tailored to small children and waiting for answers, the family was exhausted. A.V. continued to cry, fully understanding that the whole ordeal was because of his disability, which made him unwelcome where other kids were free to play. Plaintiff LaBonte

cried with her son, overcome with sadness and anger that this was happening to her young child after Plaintiffs had followed every procedure Defendant required to get A.V.'s accommodation approved. Plaintiff Veilleux was also emotional and in utter disbelief at Defendant's abrupt, unfair, and hurtful reversal of A.V.'s accommodation.

36. On the following morning of June 3, 2019 at around 8:00am, Mr. Doninger called Plaintiff LaBonte and informed her that A.V.'s medical stroller could not be used in the water attractions and that Defendant had already made the decision to deactivate and refund the entire family's season passes. After being informed of Defendant's decision, Plaintiff LaBonte requested that they also refund the pass of Plaintiff Veilleux's daughter, as she relied on Plaintiffs for transportation to Six Flags. This request was granted.

37. Mr. Doninger did not provide any further explanation for Defendant's decision or discuss any alternatives explored to attempt to resolve the conflict between A.V.'s need for accommodations and Six Flags' policy. Plaintiffs were disappointed that Six Flags failed to make a good faith effort to explore reasonable options for accommodating A.V.'s disability, and instead summarily decided to revoke and refund their season passes.

38. Defendant likewise failed to provide any details related to the speculative assertion regarding A.V.'s medical stroller posing a safety risk to others – namely, that another patron could get caught underneath the medical stroller.

39. A review of Six Flag New England's Accessibility Safety & Accessibility Guide reveals that it states only that "[g]uests must transfer from their wheelchair/ECV," meaning an electronic conveyance vehicle.[6] The Guide is silent as to whether the use of a physician-

---

[6] *See, e.g.,* Six Flag New England, *Safety & Accessibility Guide* at 60, 65, 67, https://static.sixflags.com/website/files/ sfne_ada-guidelines.pdf.

prescribed mobility aid like the Convaid Cruiser could be used upon a guest's transfer out of their wheelchair.

40. Since Plaintiff LaBonte knew that A.V. would be hurt by the news, she waited approximately a week before telling him that he could no longer go to Six Flags. A.V. asked her each day that week if Six Flags had called back to tell them that he could use the water park. When she finally told him that he could not, he was devastated. He cried and yelled for several days, including several disturbing comments, such as: "Six Flags ruined my life," "I hate Six Flags," "I just want to die," and "This is so unfair."

41. A.V. became so depressed and upset that every time he saw the Six Flags New England commercial on television he started crying again and yelling, "I hate Six Flags because they ruined my life." His emotional outbursts continued for roughly one year. Out of concern for A.V.'s persistent sadness and outbursts, Plaintiffs LaBonte and Veilleux arranged for A.V. to speak with a therapist.

42. While the outbursts have stopped, to this day, any time that Six Flags comes up in conversation, A.V. becomes withdrawn. Since the events at Six Flags, Plaintiffs LaBonte and Veilleux have seen a change in their son. A.V. lost interest in going places, trying new things, and even having friends over to his house. While Plaintiffs LaBonte and Veilleux still prioritize getting A.V. out and about, he has been hesitant to put himself out there. Defendant's actions made an indelible impression on A.V., making him much more self-conscious about his appearance and different abilities.

43. Both Plaintiff LaBonte and Plaintiff Veilleux were and are still devastated and angered by the Defendant's discrimination against their young son and its lasting impact on him. It was painful for Plaintiffs LaBonte and Veilleux to watch their child in distress and to try to

calm and console him when they were also deeply upset. They struggled to answer A.V.'s questions about why the same park where he had the most fun he has ever had suddenly decided that he was no longer welcome because of his disability.

44. Plaintiff LaBonte tried to conceal her feelings regarding the matter from A.V. as best she could to try to help her son heal, but, for weeks after the events of June 2, 2019, she was sick to her stomach, lost her appetite, and had difficulty sleeping. She spoke with a professional counselor regarding her emotional distress stemming from their experience and Six Flags and advice on how best to support A.V. while he struggled. Even today, thinking about the Defendant's treatment of A.V. and the emotional toll it took on him makes Plaintiff LaBonte's extreme feelings of anger and sadness flood back.

45. Plaintiff Veilleux did not seek professional help. However, he is still unable to speak about Defendant's treatment of A.V. without becoming emotional.

## VI.     CLAIMS FOR RELIEF

### COUNT I
### Violation of A.V.'s Rights Under Title III of the Americans with Disabilities Act
### (42 U.S.C. § 12182 *et seq.*)

46. Plaintiffs incorporate by reference the allegations of each preceding and succeeding paragraph as if fully stated herein.

47. A.V.'s medical condition described herein constitutes a disability within the meaning of the ADA. 42 U.S.C. § 12101(2).

48. Title III of the ADA provides, in pertinent part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

49. Defendant is a private entity that owns and operates an amusement park, which constitutes a place of public accommodation. *See* 42 U.S.C. § 12181(7)(I).

50. The ADA prohibits imposing or applying "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." 42 U.S.C. § 12182(b)(2)(A)(i).

51. The ADA requires places of public accommodation to make reasonable modifications in their policies, practices, and procedures when such modifications are necessary to afford equal access to "goods, services, facilities, privileges, advantages, or accommodations, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

52. Discrimination under the ADA includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

53. Public accommodations are required to permit individuals with mobility devices to use manually-powered mobility aids, such as walkers, crutches, canes, braces or other similar

devices designed for use by individuals with mobility impairments in any areas open to pedestrian use. 28 C.F.R. § 36.311(a).

54. The medical stroller used by A.V. to access the water attractions is a manually-powered mobility aid.

55. Defendant failed to make a reasonable modification to its policies, practices, and procedures to allow A.V. to safely take part in the water attractions. Defendant instead endorsed a restrictive interpretation of its cursory policy when it revoked its prior approval of A.V.'s use of a medical stroller for use in the water attractions and then failed to offer any alternative means of safely accommodating his access to the water attractions. Moreover, in revoking access, Defendant made no distinction between the water attractions, which vary in terms of water depth and other features.

56. Plaintiffs complied at all times with Defendant's policies and procedures, as initially conveyed to them, regarding the use of Six Flags water attractions by obtaining prior approval from A.V.'s physician and Defendant and transferring A.V. from his motorized wheelchair to his medical stroller before taking part in the attractions.

57. Defendant's decision to rescind A.V.'s approved accommodation relying on its stated policy subjected A.V. to discrimination based on his disability-based need for a mobility aid. This was an unlawful denial of the opportunity to participate in Six Flags' water attractions.

58. Defendant illegitimately applied eligibility criteria that screened A.V. out based on his disability, and substantially restricting his opportunity to safely enjoy the water attractions in the same manner as Defendant's non-disabled guests.

## COUNT II
### Violation of Plaintiff LaBonte and Plaintiff Veilleux's Rights by Association Under Title III of the Americans with Disabilities Act
**(42 U.S.C. § 12182 *et seq.*)**

59. Plaintiffs incorporate by reference the allegations of each preceding and succeeding paragraph as if fully stated herein.

60. A.V.'s medical condition constitutes a disability within the meaning of the ADA.

61. As his parents, Plaintiffs LaBonte and Veilleux have a known association with A.V., who has a disability within the meaning of the ADA.

62. Defendant owns and operates a place of public accommodation.

63. Under Title III of the ADA, "[i]t shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

64. Defendant's decision to refuse to permit A.V. to use his mobility aid or engage with them regarding alternative means that A.V. could use to safely access Six Flags water attractions, and then rescind the season passes of Plaintiff LaBonte, Plaintiff Veilleux, and their youngest child, constituted unlawful discrimination against Plaintiffs LaBonte and Veilleux because of their association with A.V.

## COUNT III
### Violation of the of the Massachusetts Public Accommodations Law
**(M.G.L. c. 272, § 98)**

65. Plaintiffs incorporate by reference the allegations of each preceding and succeeding paragraph as if fully stated herein.

66. A.V. is a person with a physical disability within the meaning of the Massachusetts Public Accommodation Law. *See* M.G.L. c. 272, §§ 92A, 98.

67. Defendant owns and operates a place of public accommodation. Six Flags New England is "a place of public amusement, recreation, sport, exercise or entertainment" that is "open to and accepts or solicits the patronage of the general public." M.G.L. c. 272, § 92A.

68. Defendant violated M.G.L. c. 272, § 98 when it discriminated against the Plaintiffs by denying them equal access to its water attractions because of the known disability of A.V. and because of the known association of Plaintiffs LaBonte and Veilleux with A.V.

69. Public accommodations cannot discriminate against an individual because that individual or entity has a relationship or association with an individual with a disability.

70. Plaintiffs suffered damages as a result of Defendant's unlawful acts, including past and continuing physical and emotional distress, and the costs of bringing this action.

## COUNT IV
**Violation of Article 114 of the Amendments to the Massachusetts Constitution**

71. Plaintiffs incorporate by reference the allegations of each preceding and succeeding paragraph as if fully stated herein.

72. Article 114 of the Amendments to the Massachusetts Constitution states: "No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity within the Commonwealth."

73. Defendant violated Article 114 by excluding A.V. from participation in Six Flags water attractions on the basis of his disability and denying A.V. a reasonable modification necessary to allow him to safely access and use areas of Six Flags open to pedestrian use.

74. A.V. suffered damages as a result of Defendant's unlawful acts, including past and continuing physical and emotional distress, and the costs of bringing this action.

## COUNT V
### Violation of the Massachusetts Equal Rights Act
### (M.G.L. c. 93, § 103(a))

75. Plaintiffs incorporate by reference the allegations of each preceding and succeeding paragraph by reference.

76. The Massachusetts Equal Rights Act, M.G.L. c. 93, § 103(a), mandates that persons with disabilities in the Commonwealth have, with reasonable accommodation, the same rights as other persons to the full and equal benefit of all laws and proceedings for the security of person and property, including, but not limited to the rights guaranteed by Article 114 of the Amendments to the Massachusetts Constitution.

77. By denying A.V., a person with a disability, a reasonable accommodation required to access and use areas of Six Flags New England open to non-disabled pedestrian use, Defendant violated his rights under M.G.L. c. 93, § 103(a).

78. A.V. suffered damages as a result of Defendant's unlawful acts, including past and continuing physical and emotional distress, and the costs of bringing this action.

## COUNT VI
### Retaliation in Violation of the Americans with Disabilities Act
### (42 U.S.C. § 12203)

79. Plaintiffs incorporate by reference the allegations of each of the preceding and succeeding paragraphs as if fully stated herein.

80. Public accommodations are prohibited from discriminating against an individual because they have engaged in protected conduct under the ADA, including opposing an act or practice that violates the ADA. *See* 42 U.S.C. § 12203(a), (c).

81. Plaintiffs engaged in protected conduct by opposing and complaining to Defendant regarding the discriminatory treatment to which A.V. was being subjected, and by requesting a reasonable modification of Defendant's policies.

82. Plaintiffs suffered several adverse actions, including being removed from all Six Flags water attractions, having their previously approved accommodation rescinded, and having their season passes revoked and refunded after challenging Defendant's actions.

83. Defendant's conduct unlawfully interfered with Plaintiffs' exercise and enjoyment of rights granted and protected by the ADA.

84. A causal connection existed between the protected conduct and the adverse actions taken against Plaintiffs. The close temporal proximity between the protected conduct and the adverse actions are more than sufficient to establish a causal connection. Notably, in revoking A.V.'s approved accommodation and ultimately rescinding Plaintiffs' season passes, Defendant did not make an effort to identify alternative accommodations and made no distinction between the water attractions, which vary greatly in terms of water height and other features that relate to user safety.

85. Plaintiffs suffered damages as a result of Defendant's unlawful acts, including past and continuing physical and emotional distress, and the costs of bringing this action.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Declare that Defendant, by the actions, policies, practices, and procedures described above, violated Title III of the Americans with Disabilities Act, M.G.L. c. 272, § 98, Article 114 of the Amendments to the Massachusetts Constitution, and M.G.L. c. 93, § 103(a);

b. Enjoin Defendant from discriminating against Plaintiffs in violation of Title III of the Americans with Disabilities Act, M.G.L. c. 272, § 98, Article 114 of the Amendments to the Massachusetts Constitution, and M.G.L. c. 93, § 103(a);

c. Award compensatory damages and punitive damages;

d. Award costs and reasonable attorneys' fees and costs; and

e. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

PLAINTIFFS STACY LABONTE, KELLY VEILLEUX, AND A.V.,

By their attorneys,

Dated: April 18, 2022

/s/ Tatum A. Pritchard
Tatum A. Pritchard, BBO # 664502
tpritchard@dlc-ma.org
Rizwanul Huda, BBO # 688679
rhuda@dlc-ma.org
Thomas Murphy, BBO # 630527
tmurphy@dlc-ma.org
Disability Law Center
11 Beacon St., Suite 925
Boston, MA 02108
617-723-8455

/s/ Arnold J. Lizana III
Arnold J. Lizana III, BBO #546161
alizana@attorneylizana.com
Law Offices of Arnold J. Lizana III
444A North Main Street
East Longmeadow, MA 10128
877-443-0999