UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STACEY LABONTE, KELLY VEILLEUX, each individually, and A.V., by his parents and next friends, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil No. 3:22-cv-30046-KAR |
| RIVERSIDE PARK ENTERPRISES, INC., d/b/a SIX FLAGS NEW ENGLAND, | ) ) ) ) | |
| Defendant. | ) | |

<u>MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS</u>
(Dkt. No. 9)

ROBERTSON, U.S.M.J.

Stacey LaBonte ("LaBonte") and Kelly Veilleux ("Veilleux"), parents of minor child

A.V., (collectively with LaBonte and Veilleux, "Plaintiffs") have sued Riverside Park

Enterprises, Inc., d/b/a Six Flags New England ("Six Flags") arising from the amusement park's

alleged refusal to allow A.V. to use its water attractions while secured in a physician-prescribed

medical stroller.  Plaintiffs assert five causes of action, including: violation of A.V.'s rights

under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 et seq.

(Count I); violation of LaBonte's and Veilleux's rights by association under Title III of the ADA

(Count II); violation of the Massachusetts Public Accommodations Law, Mass. Gen. Laws ch.

272, § 98 (Count III); violation of the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93,

§ 103(a) (Count V); and retaliation in violation of the ADA, 42 U.S.C. § 12203 (Count VI).[1]  Six

Flags filed a motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6) in its

entirety but at oral argument advised the court that it is only pursing its motion to dismiss with

respect to certain theories of liability under Counts I and III and Count V in its entirety.  The

parties have consented to this court's jurisdiction (Dkt. No. 14).  *See* 28 U.S.C. § 636(c); Fed. R.

Civ. P. 73.  For the following reasons, the motion to dismiss is DENIED.

## I.    BACKGROUND[2]

A.V., LaBonte and Veilleux's minor child, was born with Spinal Muscular Atrophy Type

II (SMA2), which is a progressive genetic disorder that affects his motor neurons, the nerve cells

that control voluntary muscles (Dkt. No. 1 at ¶¶ 1, 3, 11).  Due to the muscle atrophy caused by

SMA2, A.V. cannot stand, walk, or hold his torso upright unaided (*id*. at ¶ 11).  A.V. uses a

specialized motorized wheelchair and has a customized "Convaid Cruiser," which is an

attendant-propelled medical stroller with a three-point positioning belt and H-harness shoulder

straps that A.V. uses in areas that he cannot safely access in his wheelchair, including areas

where water is present (*id*. at ¶ 12).

Six Flags operates an amusement park, including a water park known as "Hurricane

Harbor" (*id*. at ¶¶ 4, 15).  On April 17, 2019, LaBonte and Veilleux visited Six Flags along with

A.V. and his younger brother; Hurricane Harbor was not yet open for the season (*id*. at ¶¶ 14-

15).  By the end of the day, LaBonte and Veilleux were interested in the prospect of purchasing

---

[1] Plaintiffs also asserted a claim for violation of Article 114 of the Amendments to the
Massachusetts Constitution (Count IV), but they have agreed to dismiss it.

[2] For purposes of ruling on this motion, the court accepts all facts alleged in Plaintiffs' complaint
as true and draws all reasonable inferences in Plaintiffs' favor.  *See In re Fin. Oversight & Mgmt.
Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640
F.3d 1, 7 (1st Cir. 2011)).

season passes to Six Flags and inquired of Guest Relations whether A.V. would be permitted to use Hurricane Harbor (*id*. at ¶ 15).  They were told that A.V. could use the water attractions if they provided documentation from a medical provider that he could safely do so (*id*. at ¶ 15).

Approximately one week later, LaBonte and Veilleux provided Six Flags with medical documentation from A.V.'s primary care physician ("PCP") stating that A.V. was medically able to take part in Six Flags attractions with accommodations, including assistance from his parents (*id*. at ¶¶ 16-17).[3]  A.V.'s PCP understood that A.V. would be using his Convaid Cruiser under the control of his parents in the water attractions (*id*. at ¶ 16).  A Six Flags Guest Relations representative reviewed the paperwork, visually inspected A.V.'s Convaid Cruiser, and informed LaBonte and Veilleux that A.V. had been approved to partake in the water attractions, excluding the water slides (*id*. at ¶ 17).  Six Flags issued A.V. an "Attraction Access Pass," which alerted attraction operators that Plaintiffs' request for accommodation had been approved by Guest Relations (*id*. at ¶ 18).  With A.V.'s access approved, LaBonte and Veilleux proceeded to buy five season passes – one for each of them, one for A.V., one for A.V.'s youngest brother, and one for Veilleux's adult daughter (*id*. at ¶ 19).

---

[3] Along with its motion to dismiss, Six Flags submitted a "To Whom It May Concern" letter purportedly from A.V.'s physician stating simply that "A.V. is currently under my medical supervision," and "is handicapped with a muscle disease called Spinal Muscular Atrophy and is confined to a wheelchair" (Dkt. No. 10-2).  Plaintiffs do not contest the authenticity of the letter, nor do they object to the court considering it without converting Six Flags' motion into one for summary judgment.  It is unclear from the record whether this letter was the only document Plaintiffs submitted to Six Flags from A.V.'s physician or whether there was additional "paperwork" indicating that A.V. was medically able to take part in Six Flags attractions with accommodations, including assistance from his parents, as alleged in the complaint.  However, whether the documentation consisted only of the letter attached to Six Flags' motion to dismiss or included additional paperwork does not affect the court's ruling on Six Flags' motion to dismiss.

The family went to Six Flags a few more times before Hurricane Harbor was set to open on May 24, 2019 (*id*. at ¶¶ 15, 20).  On May 27, 2019, the family went to Six Flags and spent most of their nine-hour visit at Hurricane Harbor with A.V. safely using his Convaid Cruiser (*id*. at ¶ 21).  A.V.'s father pushed the Convaid Cruiser from behind while his mother generally stationed herself in front of the stroller (*id*. at ¶ 23).  LaBonte and Veilleux were careful to avoid attractions that had high standing water or high waves and maintained awareness of other patrons around them (*id*. at ¶ 23).  The family spent much of their time in Splash Island, an area of Hurricane Harbor specifically designed for small children where the depth of the water only reaches two feet, which does not go above the seat of the Convaid Cruiser (*id*. at ¶ 24).

The family returned to Six Flags on June 2, 2019, and they enjoyed the use of the same water attractions in the same manner for several hours (*id*. at ¶ 26).  Following lunch, they visited the Monsoon Lagoon attraction, which, while it has depths of water of up to 5 ½ feet deep, has a zero-depth entry that allowed LaBonte and Veilleux to control the depth of water around A.V. based on how far into the water they proceeded from the point of entry (*id*. at ¶ 27).  While the family was in Monsoon Lagoon, a Six Flags representative approached and told them that A.V. was not allowed in the water attractions in his Convaid Cruiser, including the sprinkler attractions that have no standing water (*id*. at ¶ 29).  Instead, the representative told them, A.V. would have to be taken out of the Convaid Cruiser and sat on the ground or they could rent an inner tube for him to utilize, both of which options are impossible because A.V. is unable to sit upright without support (*id*. at ¶ 30).

LaBonte and Veilleux asked to speak to a manager and were directed to Guest Relations, where they first spoke with Mitchell Heisler, the Six Flags Aquatic Supervisor, who stated that it was Six Flags' policy not to allow wheelchairs to be used in the water attractions (*id*. at ¶ 32).

4

LaBonte and Veilleux explained that the Convaid Cruiser was a medical stroller that Guest

Relations had already approved for use in the water attractions before they purchased their

season passes (*id*. at ¶ 32).  LaBonte and Veilleux requested to see a copy of the policy, but

Heisler was unable to produce it (*id*. at ¶¶ 32-33).[4]  A second manager, Six Flags Director of

Operations Frank Doninger, took pictures of A.V.'s Convaid Cruiser and indicated that he would

speak to another Six Flags supervisor to determine whether an accommodation could be arranged

(*id*. at ¶ 34).  By the time the conversation with Doninger was over, it was approximately 5:00

p.m., and the family had been standing outside Guest Services advocating for A.V.'s continued

access to the water attractions and waiting for answers for hours (*id*. at ¶ 35).  They left the park

exhausted (*id*. at ¶ 35).  The next morning, Doninger called LaBonte and Veilleux and told them

that the medical stroller could not be used in the water attractions and advised them that Six

Flags had already made the decision to deactivate and refund the family's season passes (*id*. at ¶¶

34, 36).  Doninger did not provide any further explanation, nor did he discuss any alternatives to

attempt to resolve the conflict between A.V.'s need for accommodations and Six Flags' policy

(*id*. at ¶ 37).

---

[4] Six Flags has submitted a "Safety & Accessibility Guide" along with its motion to dismiss, which provides "specific information for individuals with disabilities along with general policies and guidelines," and purports to "incorporate … the requirements of the Americans with Disabilities Act" (Dkt. No. 10-3 at 3).  Plaintiffs do not challenge its authenticity or object to it being considered on Six Flags' motion to dismiss without converting the motion into one for summary judgment.  The guide does not state that wheelchairs or medical strollers cannot be used in the water attractions in Hurricane Harbor.  To the contrary and specific to Hurricane Harbor, it provides that "[m]ost of the park's attractions … are accessible to wheelchairs" (Dkt. No. 10-3 at 26).  It goes on to state that "[e]ntry, exit and transfer must be accomplished independently by the Guest or with the assistance of a member from his/her party" (*id*.).  The guide also provides information specific to each attraction, including Splash Island, Monsoon Lagoon, and Hook's Lagoon, the latter of which appears to be a sprinkler attraction.  The guide does not state that wheelchairs or medical strollers are prohibited in any of these attractions (Dkt. No. 10-3 at 27-30).

## II.    LEGAL STANDARD

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard invites a two-step pavane."  *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (citing *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 45 (1st Cir. 2012)). First, the court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  *Id*. (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id*. (quoting *Morales-Cruz*, 676 F.3d at 224 (internal quotation marks omitted)).  In ruling on a motion to dismiss, the court may consider "only the complaint, documents attached to it, and documents expressly incorporated into it."  *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014).

## III.    DISCUSSION

### A.  Count I: Violation of A.V.'s Rights Under Title III of the Americans with Disabilities Act (42 U.S.C. § 12182 et seq.)

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a public accommodation."  42 U.S.C. § 12182(a).  "To state a claim under the ADA, a plaintiff must establish (1) [that] he or she is disabled within the

6

meaning of the ADA; (2) that the defendant[ ] own[s], lease[s], or operate[s] a place of public accommodation; and (3) that the defendant[ ] discriminated against the plaintiff within the meaning of the ADA." *Marradi v. K&W Realty Inv. LLC*, 212 F. Supp. 3d 239, 245 (D. Mass. 2016) (citing *Jacobs v. Soars*, No. 14-cv-12536-LTS, 2014 WL 7330762, at *4 (D. Mass. Dec. 19, 2014) (adopted by *Jacobs v. Soars*, No. 14-cv-12536-LTS, 2014 WL 7335771, at *4 (D. Mass. Dec. 19, 2014))). Six Flags does not dispute that Plaintiffs have plausibly alleged the first two elements – that A.V. is disabled within the meaning of the ADA and that it owns, leases, or operates a place of public accommodation. As to the third element, Six Flags concedes that Plaintiffs have stated a claim of discrimination against A.V. based on the improper imposition of eligibility requirements for the use of its aquatic attractions.[5] However, Six Flags argues that Plaintiffs fail to state a claim with respect to their other two theories of discrimination, namely (1) that Six Flags failed to allow mobility aids in areas of pedestrian use and (2) that Six Flags failed to reasonably modify its policy against the use of wheelchairs or other mobility aids in its aquatic attractions. The court addresses each in turn.

Under the ADA, public accommodations are required to "permit individuals with mobility disabilities to use wheelchairs and manually-powered mobility aids, such as walkers, crutches, canes, braces, or other similar devices designed for use by individuals with mobility disabilities in any areas open to pedestrian use." 28 C.F.R. § 36.311(a). Plaintiffs allege that by refusing to allow A.V. to use his Convaid Cruiser in attractions with shallow or no standing

---

[5] The ADA includes a prohibition on "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." 42 U.S.C. § 12182(b)(2)(A)(i).

water, including sprinkler areas, Six Flags discriminated against him in violation of 28 C.F.R. § 36.311(a).  Six Flags argues that Plaintiffs have not sufficiently pled such a claim because Splash Island, Monsoon Lagoon, and the sprinkler attractions are not "areas open to pedestrian use."

The court holds that Plaintiffs have plausibly stated a claim of discrimination under 28 C.F.R. § 36.311(a).  The statute itself does not define "areas open to pedestrian use," and there is a dearth of authority on the issue.  However, in the explanation provided for the implementation of these regulations, the Department of Justice explained that "covered entities must allow people with disabilities who use wheelchairs … and manually-powered mobility aids … into all areas of a facility where members of the public are allowed to go."  U.S. Dep't of Justice, ADA Requirements: Wheelchairs, Mobility Aids, and Other Power-Driven Mobility Devices (Jan. 2014), available at http://www.ada.gov/opdmd.htm.  Plaintiffs have adequately alleged that Splash Island, Monsoon Lagoon, and the sprinkler attractions are areas of Six Flags where members of the public are allowed to go and, further, that they are traversed, in the case of the sprinkler attractions, or entered, in the case of the zero-entry pools, on foot.  This is sufficient for purposes of surviving a Rule 12(b)(6) challenge.  To the extent that Plaintiffs continue to pursue this theory of liability following discovery, Six Flags may raise this argument again on a fully developed factual record at the summary judgment stage.

The ADA also defines discrimination to include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."  42 U.S.C. § 12182(b)(2)(A)(ii).  To succeed on such a claim, "the plaintiff

must show that the defendant has a discriminatory policy or practice in effect; that he (the plaintiff) requested a reasonable modification of that policy which, if granted, would have afforded him access to the desired goods[, services, facilities, privileges, advantages, or accommodations]; that the requested modification – or a modification like it – was necessary to afford that access; and that the defendant nevertheless refused to modify the policy or practice." *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003) (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 663 n.38 (2001); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999); *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1058-60 (5th Cir. 1997)).

Plaintiffs allege that by refusing to modify its stated policy or practice against the use of wheelchairs or other mobility devices in the water attractions, Six Flags violated the reasonable modification provision of the ADA. Six Flags' argument that this theory should not survive a motion to dismiss is based on allegations in Plaintiffs' complaint that Six Flags "failed to make a good faith effort to explore reasonable options for accommodating A.V.'s disability," and "failed to offer any alternative means of safely accommodating his access to the water attractions" (Dkt. No. 1 at ¶¶ 37, 55). According to Six Flags, it has no obligation under Title III to proactively engage by identifying alternate accommodations that the disabled person has not requested. Rather, the burden on the public accommodation is simply to respond to the reasonable modification identified by the disabled party. In other words, there is no obligation to engage in an "interactive process" as there is in the employment context under Title I. *Sayian v. Verizon New England Inc.*, No. 19-cv-11845-DJC, 2022 WL 375287, at *7 (D. Mass. Feb. 8, 2022) ("An 'employer's failure to engage in an informal interactive process' can 'constitute a failure to provide reasonable accommodation.'" (quoting *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 515 (1st Cir. 1996))).

9

The First Circuit has not had the opportunity to consider whether the good faith interactive process that applies in ADA Title I employment cases extends to Title III public accommodation cases.  There is authority from other jurisdictions to the effect that it does not. *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 964 (9th Cir. 2019) ("The ADA does not make this 'interactive process' requirement applicable to public accommodations and services."); *Douglass v. 360Sweater Co., LLC*, No. 22cv0936, 2022 WL 4386635, at *4 (W.D. Pa. Sept. 22, 2022) ("[T]his Court declines to apply the interactive process/reasonable accommodation provision of Title I to this case, which is a Title III ADA case."); *Loesby v. Fischer*, No. 20-cv-01827-RM-NRN, 2021 WL 3555786, at *4 (D. Colo. July 1, 2021), *report and recommendation adopted*, No. 20-CV-01827-RM-NRN, 2021 WL 3549428 (D. Colo. Aug. 11, 2021) (holding the defendant's alleged failure to engage in the interactive process "irrelevant" where the plaintiff's claim was brought under Title III); *Young v. Arizona Summit Law Sch. LLC*, No. CV-16-03490-PHX-DJH, 2020 WL 954990, at *9 (D. Ariz. Feb. 27, 2020) ("As Ms. Young's claim is pursuant to Title III of the ADA, there was no requirement for Summit to engage in an interactive process.").  Thus, Six Flags may be correct.[6]  But even if Six Flags is correct, Plaintiffs' claim still survives a motion to dismiss for failure to state a claim. Plaintiffs have plausibly alleged that Six Flags' policy or practice is discriminatory in effect; that they requested a modification of that policy or practice which would have afforded A.V. access to the aquatic attractions, namely the ability to utilize the attractions while secured in his Convaid Cruiser under the supervision of his parents; that the modification – or a modification

---

[6] The court declines to rule on this issue in the absence of briefing from either party – Six Flags raised the issue for the first time at oral argument – and in light of the fact that it is unnecessary to do so to resolve Six Flags' motion to dismiss.

like it – was necessary to afford him access; and that Six Flags nevertheless refused to modify its policy or practice. *Dudley*, 333 F.3d at 307. This is sufficient.[7]

Finally, Six Flags seeks to strike Plaintiffs' claim for money damages on the ground that money damages are not available under Title III of the ADA. Six Flags is correct that Title III authorizes only injunctive relief, not monetary damages, to successful plaintiffs. *Joseph M. v. Becker Coll.*, 531 F. Supp. 3d 383, 395 (D. Mass. 2021) (citing *G. v. Fay Sch.*, 931 F.3d 1, 9 (1st Cir. 2019)). However, "[a] Rule 12(b)(6) analysis tests the plausibility of claims, and remedies are not claims." *Johnson v. Rapid Sheet Metal, LLC*, 560 F. Supp. 3d 623, 630 (D.N.H. 2020) (citing *Charles v. Front Royal Vol. Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629 (W.D. Va. 2014)). "[T]he only issue on a motion to dismiss is 'whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded.'" *Id.* at 329 (quoting *Douglas v. Miller*, 864 F. Supp. 2d 1205, 1220 (W.D. Okla. 2012)). Because the specific relief to which Plaintiffs are entitled is not an appropriate issue to be determined on a Rule 12(b)(6) motion, the court denies Six Flags' motion as to money damages.

B. Count Three: Violation of the Massachusetts Public Accommodations Law (Mass. Gen. Laws ch. 272, §98)

"In the Massachusetts Public Accommodation Law, Massachusetts defines places of public accommodation and bars discrimination based on a number of criteria, including

---

[7] To the extent that Six Flags intends to rely on a safety defense as it seems to argue in its brief – either legitimate safety requirement under 28 C.F.R. § 36.301(b) or 'direct threat' under 42 U.S.C. § 12182(b)(3) – those are affirmative defenses that Six Flags has the burden to prove. *Pletcher v. Giant Eagle Inc.*, No. 2:20-754, 2020 WL 6263916, at *3 (W.D. Pa. Oct. 23, 2020) (quoting *Masci v. Six Flags Theme Park, Inc.*, Civil Action No. 12-6585, 2014 WL 7409952, at *9 (D.N.J. Dec. 31, 2014)). "[A] complaint need not plead facts to avoid potential affirmative defenses …." *Deutsche Bank Tr. Co. Ams. v. Doral Fin. Corp.*, 841 F. Supp. 2d 593, 600 (D.P.R. 2012).

disability, in such places." *CapoDiCasa v. Town of Ware*, No. Civil Action No. 17-30079-

MGM, 2018 WL 3966303, at *3 (D. Mass. Aug. 17, 2018) (citing Mass. Gen. Laws ch. 272. §§

92A, 98).  Specifically, § 98 provides that "[w]hoever makes any distinction, discrimination, or

restriction on account of … any physical or mental disability … relative to the admission of any

person to, or his treatment in any place of public accommodation, resort, or amusement … shall

be liable to any person aggrieved thereby for such damages as are enumerated in section 5 of

chapter one hundred and fifty-one B …."  Mass. Gen. Laws ch. 272, § 98.  It further provides

that "[a]ll persons shall have the right to the full and equal accommodation, advantages,

facilities, and privileges of any place of public accommodation, resort, or amusement subject

only to the conditions and limitations established by law and applicable to all persons."  *Id*.

Six Flags concedes that because of the close association between the Massachusetts

Public Accommodations Law ("MPAL") and Title III, A.V.'s direct MPAL claim goes the same

way as his ADA claim, which the court has already determined survives a motion to dismiss.

*See Lesley v. Hee Man Chie*, 81 F. Supp. 2d 217, 226 (D. Mass.2000), *aff'd*, 250 F.3d 47 (1st Cir.

2001) ("Interpretation of [Mass. Gen. Laws ch. 272, § 98,] proceeds 'hand in hand' with the

interpretation of the Americans with Disabilities Act …." (citing *Abbott v. Bragdon*, 107 F.3d

934, 937 n.1 (1st Cir. 1997), *aff'd in part, rev'd in part*, 524 U.S. 624 (1998))).  However, Six

Flags argues that there is no associational claim under the MPAL and that, therefore, LaBonte's

and Veilleux's MPAL claims should be dismissed.  "The term 'associational discrimination'

refers to a claim that a plaintiff, although not a member of a protected class him or herself, is the

victim of discriminatory animus directed toward a third person who is a member of the protected

class and with whom the plaintiff associates."  *Flagg v. AliMed, Inc.*, 992 N.E.2d 354, 358

(Mass. 2013) (citing *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009)).  According

12

to Six Flags, there is no textual support for an associational claim in the MPAL, and this court should decline Plaintiffs' invitation to extend the Supreme Judicial Court's ("SJC") holding in *Flagg* – that Mass. Gen. Laws ch. 151B, § 4(16), which prohibits discrimination based on handicap in employment, encompasses a claim of associational discrimination – to the MPAL. The court finds that Plaintiffs have the better of the argument.

In *Flagg*, the plaintiff alleged that the defendant had terminated his employment because his wife was disabled by a serious medical condition for which the defendant was financially liable through its health plan. *Id*. at 357. The district court dismissed the plaintiff's claim on the defendant's motion to dismiss, ruling that the Commonwealth does not recognize claims of associational discrimination under Mass. Gen. Laws ch. 151B, § 4(16). *Id*. at 357-58. The Supreme Judicial Court transferred the plaintiff's appeal on its own motion and reversed the dismissal of the claim, finding that "interpreting § 4(16) to encompass a claim of associational discrimination finds support in the language and purpose of that section and c[h]. 151B more generally[,] in the longstanding and consistent interpretation given to the statute by the Massachusetts Commission Against Discrimination …, and in the analogous provisions of Federal antidiscrimination statutes." *Id*. at 358, 365. The *Flagg* court came to this determination based on application of "[t]he general and familiar rule … that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Id*. at 359 (quoting *Hanlon v. Rollins*, 190 N.E. 606, 608 (Mass. 1934)).

Several of the same factors that were determinative in *Flagg* are likewise present here. First, while Mass. Gen. Laws ch. 272, § 98, like ch. 151B, does not explicitly set out a claim for

associational discrimination, its language nevertheless supports one.  The statute defines the classes of persons who can bring a claim as "any person aggrieved" by the act of discrimination. Mass. Gen. Laws ch. 272, § 98.  This is virtually identical to the language in ch. 151B, which gives standing to seek relief to "[a]ny person claiming to be aggrieved" by practices made unlawful by the statute.  Mass. Gen. Laws ch. 151B, § 5.  The Supreme Judicial Court found that this language, which is the same as "a cognate provision in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. … offers strong support for the conclusion that c[h]. 151B's protections against workplace discrimination were intended to cover all those adversely affected, whether or not they are the direct target of the proscribed discriminatory animus." *Flagg*, 992 N.E.2d at 361.  Thus, the same holds true for ch. 272, § 98, and perhaps with more force given that the statute underscores that "*[a]ll persons* have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement …."  Mass. Gen. Laws ch. 272, § 98 (emphasis added).

Second, the *Flagg* court was persuaded to find that ch. 151B, § 4(16) incorporates a claim of associational discrimination based on its history.  Specifically, while ch. 151B was enacted in 1946 to create remedies for other forms of employment discrimination, the Massachusetts Legislature added § 4(16), prohibiting discrimination on the basis of handicap, in 1983.  *Flagg*, 992 N.E.2d at 359-360.  This was only three years after the Legislature ratified an amendment to the Massachusetts Constitution banning all discrimination based on handicap.  *Id*. at 360 (citing art. 114 of the Amendments to the Massachusetts Constitution).  The court concluded that "r]ead against the backdrop of this constitutional amendment as well as the command of c[h]. 151B, § 9, to interpret the statute liberally in order to effectuate its remedial purposes, these provisions can only be understood as establishing an expansive, categorical prohibition against

discrimination based on handicap in the workplace generally." *Id*. at 360.  Section 98 of ch. 272 was enacted in 1865, but it was not until 1979 that physical or mental disabilities were added to the list of protected categories.  This was only one year before the addition of article 114, and thus, is readily viewed as part of an expansive effort to eradicate disability discrimination in the Commonwealth.

Six Flags attempts to make much of the fact that ch. 272, § 98 does not contain a parallel provision to ch. 151B instructing that its provisions are to be "construed liberally for the accomplishment of its purposes."  Mass. Gen. Laws ch. 151B, § 9.   However, this difference is of no moment because, even without such a provision, it is a tenet of statutory interpretation that "remedial statutes … are 'entitled to liberal construction.'"  *Depianti v. Jan-Pro Franchising Intern, Inc.*, 990 N.E.2d 1054, 1066 (Mass. 2013) (citing *Batchelder v. Allied Stores Corp.*, 473 N.E.2d 1128, 1130 (Mass. 1985).  *See Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 565, 575 (Mass. 2007) (concluding statute is remedial where it is "intended to address misdeeds suffered by individuals,' rather than to punish public wrongs).  Indeed, "the Supreme Judicial Court has instructed that section 98, 'because the statute is an antidiscrimination statute,' be given '"a broad, inclusive interpretation"' to achieve its remedial goal of eliminating and preventing discrimination.'"  *Brooks v. Martha's Vineyard Transit Auth.*, 433 F. Supp. 3d 65, 71 (D. Mass. 2020) (quoting *Currier v. Nat'l Bd. of Med. Exam'rs*, 965 N.E.2d 829, 842 (Mass. 2012)).  *See also Concord Rod & Gun Club, Inc. v. Massachusetts Comm'n Against Discrimination*, 524 N.E.2d 1364, 1367 (Mass. 1988).

Six Flags also argues that this court should not extend the holding of the *Flagg* court regarding ch. 151B to the MPAL because the *Flagg* court indicated its intent to limit the decision to the facts of the case before it.  *See Flagg*, 992 N.E.2d at 356 (answering "in the circumstances

of this case" that Mass. Gen. Laws ch. 151B, § 4(16) bans an employer from discriminating against its employee based on the handicap of a person with whom the employee associates). The problem with Six Flags' argument is that there is an "intertextual link" between sections 92A and 98 and ch. 151B, which, "in the words of the Supreme Judicial Court [amounts to] 'the integration of [sections 92A and 98] into [chapter] 151B." *Brooks*, 433 F. Supp. 3d at 72 (second and third alterations in original) (quoting *Currier*, 965 N.E.2d at 842). Specifically, Mass. Gen. Laws ch. 151B, § 5, grants the MCAD the authority to enforce violations of § 98. Mass. Gen. Laws ch. 151B, § 5. Section 98 of chapter 272, in turn, defines the violator's liability as "such damages as are enumerated" in Mass. Gen. Laws ch. 151B, § 5. Mass. Gen. Laws ch. 272, § 98. Given section 98's "integration" into ch. 151B, it would be unduly restrictive to conclude that ch. 151B encompasses a claim of associational discrimination while section 98 does not.

Lastly, Six Flags notes that *Flagg* turned, in part, on the definition of "handicap" in ch. 151B, as including "being regarded as having [a physical or mental impairment which substantially limits one or mor major life activities of a person]." Mass. Gen. Laws ch. 151B, § 1(17). The *Flagg* court reasoned that this amounted to a "signal that the Legislature intended § 4(16) to prevent an employer's animus against disability from adversely affecting not just those employees with actual handicaps but essentially all members of the workforce, because every employee theoretically has the potential for 'being regarded' by the employer as having an impairment." *Flagg*, 992 N.E.3d at 361. By contrast, ch. 272, § 98 does not define "disability," and so, we look to the ADA to define it. According to Six Flags, while the ADA includes in its definition of disability, "being regarded as having [a physical or mental impairment that substantially limits one or more major life activities]," 42 U.S.C. § 12102(1)(C), we know that

this definition does not include an associational claim because the ADA has a separate section for associational claims. *See* 42 U.S.C. § 12182(b)(1)(E) ("It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.").

The problem with the Six Flags' argument is that the ADA was not enacted until 1990, many years after Mass. Gen. Laws ch. 272, § 98 was amended to include physical or mental disabilities in the list of protected categories. "The ADA, therefore, cannot usefully inform our understanding of the Legislature's intent concerning associational discrimination when it amended [Mass. Gen. Law ch. 272, § 98 eleven] years earlier …." *Flagg*, 992 N.E.2d at 365. A much more plausible argument is that the Massachusetts Legislature intended to include claims of associational discrimination under the MPAL as evidenced by its granting of standing to "any person aggrieved" by a violation of the statute, and its emphasis that "[a]ll persons …have the right to … full and equal accommodations" as discussed above. Mass. Gen. Laws ch. 272, §98. For these reasons, the court denies Six Flags' motion to dismiss LaBonte's and Veilleux's claims of associational discrimination under the MPAL.

C. Count Five: Violation of the Massachusetts Equal Rights Act (Mass. Gen. Laws ch. 93, § 103(a))

The Massachusetts Equal Rights Act ("MERA") provides in pertinent part that:

> Any person within the commonwealth, regardless of handicap or age as defined in chapter one hundred and fifty-one B, shall, with reasonable accommodation, have the same rights as other persons to make and enforce contracts … and to the full and equal benefit of all laws and proceedings for the security of persons and property, including, but not limited to, the rights secured under Article CXIV of the Amendments to the Constitution.

Mass. Gen. Laws ch. 93, § 103(a).  "In effect, MERA incorporates the rights against handicap discrimination protected by art. 114 of the Amendments to the Massachusetts Constitution." *Cargill v. Harvard Univ.*, 804 N.E.2d 377, 391 (Mass. 2004).  Six Flags argues that Plaintiffs' MERA claim is preempted and, therefore, subject to dismissal.  The court is not persuaded.

Six Flags cites a single case in support of its argument.  In *Charland v. Muzi Motors, Inc.*, 631 N.E.2d 555 (Mass. 1994), the Supreme Judicial Court held that "where [Mass.] G[en]. L[aws] c[h]. 151B is applicable, employees alleging discriminatory conduct by their employer must comply with the administrative requirements of c[h]. 151B and failure to do so precludes actions by employees based on the equal rights act." *Id*. at 557.  The court "base[d] [its] decision on the language of c[h]. 151B, legislative intent, and [its] precedents interpreting its scope."  *Id*.

A review of the language of the exclusivity provision of the statute reveals that it is not applicable to claims brought under Mass. Gen. Laws ch. 272, § 98.  It provides that "as to acts declared unlawful by section 4, the administrative procedure provided in this chapter under section 5 shall, while pending, be exclusive …."  Mass. Gen. Laws ch. 151B, § 9.  While Mass Gen. Laws ch. 272, § 98 adopts the remedies of ch. 151B, disability discrimination by public accommodations is not declared unlawful by ch. 151B, § 4; it is declared unlawful in section 98. Thus, by its terms, the exclusivity provision is inapplicable.

Moreover, Plaintiffs have directed the court to two cases in this District in which the courts have allowed parallel MPAL and MERA claims to proceed.  In one case, *Brooks*, there was no discussion of the issue of preemption.  *Id*., 433 F. Supp. 3d at 74-75.  In the other case, *CapoDiCasa*, the court addressed a preemption argument by the defendant and rejected it, holding that dismissal of the MERA claim was premature at the Rule 12(b)(6) stage of the

litigation, and that the plaintiff should be allowed to proceed with both counts as alternative

bases for liability until after discovery was completed.  *Id.*, 2018 WL 3966303, at *6.

Given the plain language of the statute, combined with the cases in this district Plaintiff

cites, this court declines to grant Six Flags' motion to dismiss Plaintiff's MERA claim.

## IV.   CONCLUSION

For the above-stated reasons, Six Flags' motion to dismiss (Dkt. No. 9) is DENIED.

It is so ordered.

Dated: November 28, 2022                    /s/ Katherine A. Robertson
                                            KATHERINE A. ROBERTSON
                                            United States Magistrate Judge