UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STACEY LABONTE, KELLY VEILLEUX, each individually, and A.V., by his parents and next friends,<br><br>        Plaintiffs,<br><br>v.<br><br>RIVERSIDE PARK ENTERPRISES, INC., d/b/a SIX FLAGS NEW ENGLAND,<br><br>        Defendant. | Civil No. 3:22-cv-30046-KAR |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 50)

ROBERTSON, U.S.M.J.

    Stacey LaBonte ("LaBonte") and Kelly Veilleux ("Veilleux"), parents of minor child A.V., (collectively with LaBonte and Veilleux, "Plaintiffs") have sued Riverside Park Enterprises, Inc., d/b/a Six Flags New England ("Six Flags") arising from the amusement park's alleged refusal to allow A.V. to use its water attractions while secured in a physician-prescribed medical stroller. Plaintiffs assert five causes of action, including: violation of A.V.'s rights under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 *et seq*. (Count I); violation of LaBonte's and Veilleux's rights by association under Title III of the ADA (Count II); violation of the Massachusetts Public Accommodations Law, Mass. Gen. Laws ch. 272, § 98 (Count III); violation of the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93,

1

§ 103(a) (Count V); and retaliation in violation of the ADA, 42 U.S.C. § 12203 (Count VI).[1] Plaintiffs seek declaratory and injunctive relief on all counts, as well as compensatory damages on Counts III, V, and VI. The court denied Six Flags' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 27). Thereafter, the parties undertook discovery, including, on Six Flags' part, depositions of LaBonte, Veilleux, and A.V. Based on testimony Six Flags elicited during those depositions, Six Flags now moves to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction on standing and mootness grounds (Dkt. No. 50). The parties have consented to this court's jurisdiction (Dkt. No. 14). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, Six Flags' Rule 12(b)(1) motion to dismiss is DENIED.

I.   BACKGROUND

A.   Allegations in the Complaint

In the summer of 2019, LaBonte and Veilleux purchased season passes to the Six Flags amusement park in Agawam, Massachusetts, for themselves, A.V., A.V.'s younger brother, and Veilleux's adult daughter. They had been assured by Six Flags' staff that A.V., who has Spinal Muscular Atrophy Type II (SMA2) and cannot stand, walk, or hold his torso upright unaided, could use the aquatic attractions in the "Hurricane Harbor" area of the park while in his medical stroller; specifically, A.V. would utilize a Convaid Cruiser, an attendant-propelled medical stroller with a positioning belt and shoulder straps (*id*. at ¶¶ 1, 3, 4, 11, 12, 15, 17, 19). LaBonte and Veilleux had provided Six Flags with medical documentation from A.V.'s primary care

---

[1] Plaintiffs also asserted a claim for violation of Article 114 of the Amendments to the Massachusetts Constitution (Count IV), but they have agreed to dismiss it.

physician stating that A.V. was medically able to take part in Six Flags attractions with accommodations, including assistance from his parents (*id*. at ¶¶ 16-17).

On May 27, 2019, the family enjoyed a full day at Hurricane Harbor with A.V. safely secured in his Convaid Cruiser under his parents' control (*id*. at ¶¶ 21, 23). However, when the family returned to Six Flags on June 2, 2019, they were told by a Six Flags representative that A.V. was not allowed in any of the water attractions, including the sprinkler attraction, which had no standing water, in his Convaid Cruiser (*id*. at ¶¶ 26, 29). The only options they were given were to take A.V. out of the Convaid Cruiser and sit him on the ground or to rent an inner tube for A.V. to sit in; both alternatives are impossible because A.V. is unable to sit upright without support (*id*. at ¶ 30). LaBonte and Veilleux tried to resolve the situation with Six Flags supervisory personnel, but they were ultimately told the following day by Six Flags' Director of Operations Frank Doninger that the medical stroller could not be used in the water attractions. Doninger further told them that Six Flags had already made the decision to deactivate and refund the family's season passes (*id*. at ¶¶ 34, 36). Doninger did not provide any further explanation, nor did he discuss any alternatives to attempt to resolve the conflict between A.V.'s need for accommodations and Six Flags' asserted policy (*id*. at ¶ 37).

      B.     <u>Deposition Testimony and Affidavits</u>

Six Flags deposed LaBonte, Veilleux, and A.V. in the fall of 2023. Two topics Six Flags' counsel covered included A.V.'s ongoing use of the Convaid Cruiser and Plaintiffs' intentions to return to Six Flags. LaBonte and A.V. both testified that A.V. had not used his Convaid Cruiser since June 2, 2019, the day Six Flags told him he could not use it in the water attractions, and that it was likely he had outgrown it (Dkt. No. 50-2 at 7, 10-11; Dkt. No. 50-3 at 7). LaBonte testified that she would "never go back [to Six Flags] in [her] life," in response to a

question about what Six Flags could do to make things right by her (Dkt. No. 50-2 at 22). Veilleux was asked a more pointed question, that being whether he ever intended to go back to Six Flags if the court ruled in his favor and ordered Six Flags to allow the Convaid Cruiser to be used in the water attractions. He responded, "[t]hat would solely be on my son A.V.," but "[p]ersonally, no" (Dkt. No. 50-4 at 10). Finally, A.V. answered "no," in response to being asked if he "[w]ould … like to go back to Six Flags today," and responded "yeah," when asked if he was "kind of over it" (Dkt. No. 50-3 at 8).

A.V. and his mother have submitted affidavits in response to Six Flags' 12(b)(1) motion. A.V. states in his affidavit that if Six Flags changes its policy to allow him to take part in the water attractions using a mobility aid, he would like to go back and that he could get a new manual mobility aid that would allow him to do so (Dkt. No. 55-1 at ¶¶ 11, 14). LaBonte similarly states that if Six Flags changes its policy, she would "absolutely go back" to support A.V. and that they could get him a new mobility aid that can be used in water. LaBonte explains that her "responsibilities as a mother and desire for A.V. to be happy outweigh [her] personal feelings" about Six Flags (Dkt. No. 55-2 at par. 5, 7).

## II.     LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is based on a "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). To survive a 12(b)(1) motion to dismiss, the party invoking federal jurisdiction bears the burden of proving its existence. *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). Standing under Article III, which restricts the authority of federal courts to those disputes involving "cases" or "controversies," U.S. Const. III, § 2, may be challenged through a Rule 12(b)(1) motion to dismiss. *Van Wagner Boston, LLC v. Davey*, 770 F.3d 33, 36 (1st Cir. 2014). "To 'assure[ ] respect' for this limitation, 'plaintiffs must' establish

that they have standing to sue.'" *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020) (quoting *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 923 F.3d 209, 211 (1st Cir. 2019)).  A showing of standing requires plausible allegations of "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Amrhein v. eClinical Works, LLC*, 954 F.3d 328, 330 (1st Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  *See also Spokeo*, 578 U.S. at 338 ("[T]he plaintiff must 'clearly … allege facts demonstrating' each element [of standing]") (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  "[C]onclusory assertions" and "unfounded speculation" do not "supply the necessary heft" to successfully make this showing.  *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir.), *cert. denied*, 574 U.S. 991 (2014)).

When a defendant seeks dismissal at the pleading stage, the court "take[s] as true all well-pleaded facts in the plaintiffs' complaint[ ], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor."  *Van Wagner Boston, LLC*, 770 F.3d at 36 (quoting *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009)).  That said, the court's jurisdictional inquiry is not confined to the pleadings; "[w]here … those facts are illuminated, supplemented, or even contradicted by other materials in the district court record, … [the court] may consider those other materials." *Id*. (quoting *Aguilar v. U.S. ICE*, 510 F.3d 1, 8 (1st Cir. 2007)).  In order to reach its ultimate legal conclusion, the court may engage in preliminary factfinding. *Skwira v. United States*, 344 F.3d 64, 71-72 (1st Cir. 2003).  "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction [-] its very power to hear the case [-] there is substantial authority that [where the

jurisdictional challenge is based on facts that are not intertwined with the merits of the plaintiff's claim,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Torres–Negron v. J & N Records, LLC*, 504 F.3d 151, 162–63 (1st Cir.2007) (first alteration in original) (quoting *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990)).

### III.  DISCUSSION

Defendant's motion to dismiss on jurisdictional grounds is based on both a lack of standing and mootness.  "Standing in the jurisdictional sense is based on the facts as they existed at the time the complaint was filed." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 15 (1st Cir. 2004) (citing *Mangual v. Rotger-Sabat*, 317 F.3d 45, 58 (1st Cir. 2003)).  To have standing, "a plaintiff must demonstrate that [ ]he ""'has sustained or is immediately in danger of sustaining some direct injury' ... [that] must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'""" *Id*. (second and third alterations in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  "An inquiry into standing must be based on the facts as they existed when the action was commenced." *Roe v. Healey*, 78 F.4th 11, 20 (1st Cir. 2023) (quoting *Ramírez v. Sánchez Ramos*, 438 F.3d 92, 97 (1st Cir. 2006)).  "[P]ast harm does not confer standing to seek forward-looking declaratory or injunctive relief unless there is ongoing injury or a sufficient threat that the injury will recur." *Id*. at 21 (citing *Efreom v. McKee*, 46 F.4th 9, 21-22 (1st Cir. 2022); *Lyons*, 461 U.S. at 111).

In addition to meeting the standing requirement, the plaintiff "must maintain a personal interest in the outcome throughout the litigation or the controversy becomes moot and unjusticiable despite the court's retention of subject matter jurisdiction." *Steir*, 383 F.3d at 15 (citing *Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 71 (1st Cir. 2004)).  In other words, "'[t]he

requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout the litigation (mootness).'" *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 387 n.3 (1st Cir. 2000) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "The burden of establishing mootness rests squarely on the party raising it, and '[t]he burden is a heavy one.'" *Mangual*, 317 F.3d at 60 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). To establish mootness, "[i]t must be 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *United States v. Concentrated Phosphate Export, Ass'n*, 393 U.S. 199, 203 (1968)).

 Here, Defendant argues that Plaintiffs lacked standing to bring their forward-looking claims when they commenced this litigation in April 2022, because A.V. had not used his Convaid Cruiser for nearly three years by that point, nor could he have at the time because he had outgrown it. Defendant additionally argues that Plaintiffs' claims are moot because, based on their deposition testimony, they never intend to return to Six Flags, and, thus, there is no possibility that they will again face the alleged unlawful discrimination. The court addresses each argument in turn.

 A. <u>Standing</u>

 Defendant's leading argument is that Plaintiffs "obviously" cannot establish standing because their "entire case is built around a central premise: that A.V. should be allowed the use of his Convaid Cruiser in an aquatic attraction at Six Flags," but that by the time they filed the lawsuit, A.V. had not used the Convaid Cruiser for nearly three years and had outgrown it (Dkt. No. 51 at 13). The record does not support or compel Defendant's limited view of Plaintiffs'

case. Plaintiffs have adequately alleged standing to pursue A.V.'s direct and LaBonte's and Veilleux's associational discrimination claims.

"In the context of Title III of the ADA, a plaintiff generally must 'show a real and immediate threat that a particular (illegal) barrier will cause future harm.'" *Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005) (quoting *Dudley v. Hannaford Bros. Co.,* 333 F.3d 299, 305 (1st Cir.2003)). "'[A] disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA' and 'who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA' suffers actual or imminent harm sufficient to confer standing." *Id*. (quoting *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002)). The Supreme Court has instructed courts to take a broad view of standing in cases brought under the ADA, "where … private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 209 (1972)).

Plaintiffs allege that Six Flags failed to make a reasonable modification to its policies, practices, and procedures in June of 2019 to allow A.V. to safely take part in any of the water attractions in its Agawam amusement park when it refused to allow him to use a medical stroller or to offer any alternative means of accommodating his access (Dkt. No. 1 at 13). While A.V. was using a Convaid Cruiser at the time, there is no indication in the complaint that Six Flags' refusal to allow A.V. to use a medical stroller was because it was a Convaid Cruiser or that Six Flags would allow A.V. to use any other type of medical stroller or mobility device or aid in its aquatic attractions. Deposition testimony from Six Flags' employees suggests the opposite. Six Flags' Operations Manager testified that Six Flags does not allow any wheelchairs, strollers, or

equipment of any kind in its water attractions (Dkt. 55-3 at 7). Six Flags' Director of Operations further testified that Defendant's Safety & Accessibility Guide, on which it relied to disallow A.V.'s use of his Convaid Cruiser, was amended following the June 2, 2019, incident with Plaintiffs to state that the water attractions require "[g]uests [to] transfer from their wheelchair/ECV;" he explained that this had always been Six Flags' policy, but that the change was made to the written policy to make sure it was "spelled out" for guests (Dkt. 55-4 at 4-5). Thus, the use of the Convaid Cruiser per se is not central to Plaintiff's discrimination claim any more than the use of a particular model of wheelchair would be crucial to a discriminatory access claim premised on a failure to provide a wheelchair ramp. Plaintiffs allege not just that Six Flags refused to allow A.V. to use his Convaid Cruiser, the particular model of mobility aid he was utilizing at the time, in its water attractions, but also that Six Flags refused to allow him to use any medical stroller and, further, refused to offer any other reasonable accommodation. Thus, Plaintiffs are threatened with the same harm in the future based on Six Flags' alleged discriminatory policy and practice notwithstanding the fact that A.V. can no longer use the Convaid Cruiser he used in 2019.

Six Flags indirectly acknowledges that Plaintiffs' case is not specific to the Convaid Cruiser in its reply brief. Responding to Plaintiffs' argument that Six Flags is premising A.V.'s loss of standing on the changes to his body and his needs between the ages of 11 and 16 (which it denies), Six Flags states that it would not have challenged Plaintiffs' standing if they had acquired an updated medical stroller for A.V. to use after he outgrew the Convaid Cruiser (Dkt. No. 58 at 4-5). Six Flags' reasoning appears to be that if Plaintiffs owned an updated medical stroller that was – unlike A.V.'s motorized wheelchair – able to get wet, Plaintiffs might be able to establish that they are sufficiently likely to be subjected to Six Flags alleged discriminatory

policy of not allowing manual mobility devices in its water attractions. However, the argument continues, given that A.V. does not own such a device, it is too speculative for standing purposes to suggest that A.V. might be subjected to Six Flags' discriminatory policy if he obtains one in the future. The court disagrees. "The enforcement provision of Title III states that '[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by [Title III] does not intend to comply with its provisions.'" *Disabled Americans for Equal Access, Inc.*, 405 F.3d at 65 n.7 (quoting 42 U.S.C. § 12188(a)(1)). "Section 12188(a)(1) thus 'negates any requirement that a disabled person engage in a futile gesture to establish the existence of a discriminatory policy or practice' for purposes of bringing suit under Title III." *Id.* (quoting *Dudley*, 333 F.3d at 306). Plaintiffs have not alleged, and there is no evidence before the court, to suggest that A.V. would have any use for a manual mobility aid that can get wet for any reason other than to participate in Six Flags' water attractions. Indeed, the evidence before the court suggests otherwise, insofar as A.V. did not use the Convaid Cruiser at any time after the June 2019 incident at Six Flags. Plaintiffs were not required to engage in the futile gesture of purchasing a probably expensive manual mobility aid that A.V. had no other use for and that Six Flags had no intention of allowing him to use in its water attractions to establish standing. So much of Defendants' motion to dismiss as is based on Plaintiffs' claimed lack of standing is denied.

    B. <u>Mootness</u>

To support dismissal on mootness grounds, Six Flags relies primarily on the *Steir* decision, in which the First Circuit affirmed the dismissal of the plaintiff's ADA claims arising from the Girl Scouts' alleged discrimination against her on the basis of her disability for want of standing where the record was "devoid of any evidence suggesting that [the minor plaintiff]

plans to return to the Girl Scouts." *Id.*, 383 F.3d at 15.  Thus, the minor plaintiff faced "no threat of future harm or discrimination from the defendants and therefore lack[ed] standing to obtain injunctive relief." *Id.*  While *Steir* is instructive on the issue of mootness, it is readily distinguishable and does not support dismissal, at least at this time.

In a footnote to the *Steir* decision, the First Circuit indicated that the only record evidence suggesting that the minor plaintiff might be interested in resuming her scouting career was in an affidavit submitted after the district court had signaled how it would rule on the standing issue.  The court explained that "[w]hatever the import of the affidavit, it was submitted seven days after the deadline set by the district court for submissions on its proposed ruling on the standing issue – too late to be considered by the district court or this court on appeal." *Id.* at 16 n.12.  Similar to *Steir*, A.V. and his mother have submitted affidavits in response to Six Flags raising the mootness issue.  Unlike *Steir*, however, they did so in a timely fashion and the affidavits can be considered.  A.V. states in his affidavit that if Six Flags changes its policy to allow him to take part in its water attractions using a mobility aid, he would like to go back, and he could get a new manual mobility aid to use there (Dkt. No. 55-1 at ¶¶ 11, 14).  LaBonte similarly states that if Six Flags changes its policy, she would "absolutely go back" to support A.V. and that they could get him a new mobility aid; her "responsibilities as a mother and desire for A.V. to be happy outweigh [her] personal feelings" (Dkt. No. 55-2 at ¶¶ 5, 7).[2]

Six Flags nevertheless asks this court not to consider the affidavits because they contradict earlier sworn deposition testimony.  While the question is somewhat close, the court is

---

[2] The other case on which Defendants rely, *G. v. The Fay School (By and Through its Bd. of Trs.*, No. 15-CV-40116-TSH, 2018 WL 11190703 (D. Mass. June 8, 2018), is similarly distinguishable where the minor plaintiff was not in a position to re-enroll in the defendant ninth-grade school because he had completed the ninth grade. *Id.* at *1.

not persuaded. A.V.'s testimony and affidavit easily can be read as not contradictory. A.V.'s statement agreeing that he was "over it" is so vague as to be meaningless from an evidentiary standpoint, and A.V.'s testimony that he would not want to go back to Six Flags at the time of his deposition can be understood as indicating that he did not want to go back to Six Flags without a policy change that would enable him to use the water park facilities. It is not too speculative to posit that A.V. might change his mind if Six Flags' policy changed, allowing him to engage in an activity that his family enjoyed when his opportunities for such activities are limited by his disabilities. Moreover, it was not A.V.'s responsibility to clarify at his deposition that he meant only that he did not want to go back to Six Flags if the policy remained the same, but that if the policy changed, he would be interested in returning. That responsibility lay with Six Flags' lawyer, not the minor witness. Nor were A.V.'s lawyers under a duty to ask a follow-up question that Six Flags' lawyer did not ask. In sum, it is not "absolutely clear" that A.V. would never go back to Six Flags and thus never face a repeat of alleged discriminatory behavior, as would be necessary to establish that his claims are moot. *Mangual*, 317 F.3d at 60. Veilleux, for his part, testified that he would be guided by A.V. Thus, if A.V. might go back, so, too, might Veilleux. This leaves only A.V.'s mother. Her testimony is more difficult to reconcile because she testified apparently without equivocation that she would never go back to Six Flags. However, while the analysis is close, her affidavit is sufficient to prevent Six Flags from demonstrating with absolute clarity that she would never go back to the amusement park with A.V. under any circumstances. Six Flags' counsel did not follow up and ask her if she would go back to Six Flags if the policy changed or if A.V. wanted to go back. As a result, while her deposition testimony is in some tension with her affidavit, it is not directly contradictory. Nor did she have a burden to answer questions that were not put to her. Finally,

the court finds it credible that A.V.'s mother would put her own feelings aside to support her disabled minor child's wish to do something with other family members that he found fun and is physically able to do with available accommodations.  Thus, Defendants have not met the "heavy" burden of showing that Plaintiffs' claims are moot.  *Id*.

### IV.     CONCLUSION

For the above-stated reasons, Six Flags' motion to dismiss (Dkt. No. 50) is DENIED.

It is so ordered.

Dated: January 7, 2025                                                  /s/ Katherine A. Robertson
                                                                         KATHERINE A. ROBERTSON
                                                                         United States Magistrate Judge